COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

ESTATE of Abraham GOLDSTEIN, Deceased, Anna Goldstein, Ellie Goldstein and Ziona Kaplan, Executors, and Anna Goldstein, Respondents.

No. 24, Docket 28808.

United States Court of Appeals
Second Circuit.

Argued Oct. 13, 1964.

Decided Jan. 5, 1965.

Richard J. Heiman, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Dept. of Justice, on the brief), for petitioner.

Samuel J. Foosaner, of Foosaner, Saiber & Schlesinger, Newark, N. J., for respondents.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

SMITH, Circuit Judge:

This is a petition by the Commissioner of Internal Revenue for review of a decision of the Tax Court of the United States, Withey, J., granting taxpayers' petition for redetermination of deficiency in individual income tax for 1950 assessed by Commissioner. Taxpayers are the executors of the estate of Abraham Goldstein, and Anna, his widow. In 1950 Abraham and his wife, Anna were the shareholders in A & A Corporation, an insurance agency. In that year on dissolution of the corporation they were distributees of its assets, including the right to renewal commissions on some 5000 life insurance policies. The rights ran some 9 to 14 years, contingent on survival of the assureds, payment of premiums and conversion of policies. In their 1950 return Abraham and Anna omitted from gross income any amount for the value of the renewal rights on the ground that the rights had no ascertainable fair market value when received in 1950. In 1953 and 1954 renewal commissions received were treated as capital gains by the taxpayers. The Commissioner in 1956 issued notice of deficiencies for those years, ruling that the corporate dissolution was a closed transaction in 1950 and that the commissions collected were ordinary income. Taxpayers petitioned the Tax Court for review, contending that the rights to the commissions had no ascertainable value in 1950 and that the commissions were taxable as capital gain only as received after the dissolution of the corporation. In the alternative, they contended that if the rights to renewal commissions were susceptible of valuation in 1950, such value was greater than the commissions received prior to 1955 and the 1953 and 1954 commissions represented return of capital and not taxable income for those years. The Tax Court on March 18, 1960 held for the taxpayers. Although it agreed with the Commissioner that the rights had a fair market value when distributed in 1950 it found that value to be $70,000, an amount in excess of the commissions received prior to 1955. Estate of Goldstein v. Commissioner, 33 T. C. 1032.

Thereupon, by notice dated October 25, 1961 the Commissioner asserted a deficiency for the year 1950. The present action followed in the Tax Court, which held the adjustment for 1950 barred by the statute of limitations.

The sole question before the Tax Court and before us is whether the require-

ments of Sections 1311–1314 [1] have been satisfied, so that the statute of limitations has been tolled. The Tax Court found that the requirements had not been satisfied, and we agree.

For the Commissioner to succeed in tolling the statute of limitations under 1311 in order to make a late adjustment

of 1950 income, he must establish that taxpayers in the 1953–54 case maintained a different position from that relied on in the 1950 return. This he has failed to do.

Here the taxpayers never abandoned their contention that there was no ascertainable value of the rights in 1950.

---

[1]. "§ 275. Period of Limitation Upon Assessment and Collection.

"Except as provided in section 276—

"(a) *General rule.* The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."

\* \* \* \* \*

(26 U.S.C.1952 ed., Sec. 275.)
Internal Revenue Code of 1954:
"§ 1311. Correction of Error

"(a) *General Rule.*—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corected by an adjustment made in the amount and in the manner specified in section 1314.

"(b) *Conditions Necessary for Adjustment.*—

"(1) *Maintenance of an inconsistent position.*—Except in cases described in paragraphs (3) (B) and (4) of section 1312, an adjustment shall be made under this part only if—

"(A) in case the amount of the adjustment would be credited or refunded in the same manner as an overpayment under section 1314, there is adopted in the determination a position maintained by the Secretary or his delegate, or

"(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

"and the position maintained by the Secretary or his delegate in the case described in subparagraph (A) or maintained by the taxpayer in the case

described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be."

(26 U.S.C.1958 ed., Sec. 1311.)
Treasury Regulation on Income Tax (1954 Code):

"Sec. 1.1311(b)–1 [as amended by T. D. 6617, 1962–2 Cum.Bull. 196] *Maintenance of an inconsistent position.*

"(a) *In general.* Under the circumstances stated in § 1.1312–1, § 1.1312–2, paragraph (a) of § 1.1312–3, § 1.1312–5, § 1.1312–6, and § 1.1312–7, the maintenance of an inconsistent position is a condition necessary for adjustment. The requirement in such circumstances is that a position maintained with respect to the taxable year of the determination and which is adopted in the determination be inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be, with respect to the taxable year of the error. That is, a position successfully maintained with respect to the taxable year of the determination must be inconsistent with the treatment accorded an item which was the subject of an error in the computation of the tax for the closed taxable year. Adjustments under the circumstances stated in paragraph (b) of § 1.1312–3 and in § 1.1312–4 are made without regard to the maintenance of an inconsistent position.

\* \* \* \* \*

"(c) *Adjustments resulting in additional assessments.* (1) An adjustment under any of the circumstances stated in § 1.1312–2, paragraph (a) of § 1.1212–3, § 1.1312–5, § 1.1312–6, or 1.1312–7 which would result in an additional assessment is authorized only if (i) the taxpayer with respect to whom the determination is made has, in connection therewith, maintained a position which is inconsistent with the erroneous exclusion, omission, allowance, recognition, or nonrecognition, as the case may be, in the year of the error, and (ii) such inconsistent position is adopted in the determination."

They did point out that if the Commissioner's claim that there was an ascertainable value was upheld, it was greater than the amount received through the years in issue, 1953 and 1954. Consistently with their original position they reported the commissions received in 1953 and 1954 as income entitled to capital gains treatment. This position was not abandoned by the taxpayers, but the Commissioner shifted his position on review of the 1953 and 1954 determinations from a claim that all the commissions received were ordinary income since the corporate dissolution was a closed transaction, to a claim that the 1953 and 1954 commissions were ordinary income since the rights had an ascertainable value in 1950 and the amounts received prior to 1953 exceeded that value.

 The Tax Court held that inconsistency of position does not result from an alternative position taken by a taxpayer, citing Estate of A. W. SoRelle, 31 T.C. 272 (1958). Whether or not this is invariably true we need not determine, for here the taxpayers adhered to their original claim, that there was no ascertainable value of the rights in 1950. This issue was found against them, but the value established by the Tax Court exceeding the amounts received through 1954, the Tax Court held that the 1953 and 1954 receipts were not taxable since the fair market value of $70,000 fixed by the Tax Court as taxpayers' basis had not yet been recovered. It is true that the final result was inconsistent with the theory of the 1950 return, but this was based not on an abandonment by the taxpayers of their 1950 theory, but on the action of the Tax Court in overruling it.[2]

Moreover, as the Tax Court pointed out, the Commissioner himself had taken an inconsistent position that the rights had an ascertainable value in 1950 but also contended that all subsequent collections of commissions were ordinary income to the taxpayers, and it was this claim that led to the alternative contention of the taxpayers. An adjustment is not authorized if the Commissioner and not the taxpayer has maintained the inconsistent position. Reg. 1.1311(b)–1(c) (2); Reg. 1.1312.7. See Heer-Andres Investment Co. v. Commissioner, 22 T.C. 385, 390 (1954).

The Tax Court properly gave a strict construction to the provisions allowing the reopening of closed years. Gooding v. United States, 326 F.2d 988, 990 (Ct.Cl.1964). The decision of the Tax Court is affirmed.

---

2. See discussion of this case in Dobson v. United States, 330 F.2d 646 (Ct.Cl.1964) esp. concurring opinion of Laramore, J., at p. 650 n. 2.